1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NYLA F. POTTER and LYNDELL R. POTTER, | Case No.: 2:24-cv-1173-LK |
| PLAINTIFFS, | VERIFIED |
| v. | |
| CLEAR RECON CORP. a California Corporation; BANK OF AMERICA N.A. a National Association, and ANDREY BYKHNYUK, an individual, | FIRST AMENDED COMPLAINT FOR DAMAGES |
| | JURY TRIAL DEMANDED |
| DEFENDANTS. | |

COMES NOW Plaintiffs Nyla and Lyndell Potter, by and through his attorney of record, Arthur Ortiz, staff attorney at Northwest Consumer Law Center, and for plaintiffs' First Amended Complaint against Defendants Clear Recon Corp., Bank of America N.A., and Mr. Andrey Bykhnyuk, and allege as follows:

## INTRODUCTION

Clear Recon Corp, acting as nonjudicial foreclosure trustee, sold plaintiffs' agricultural property on May 17, 2024, despite receiving notice that on May 15, 2024 plaintiffs' reverse mortgage transaction had closed and funded thus making pay off of defendants' debt to BANA imminent and the foreclosure sale unnecessary.

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

# I.    PARTIES

1.0    Plaintiffs, Nyla and Lyndell Potter, are and at all times pertinent to this complaint, and at all times material to this action, siblings residing in King County, Washington and were the co-owners of the real property located at 19705 S.E. 284th St., Kent, WA 98042-8639, (*hereinafter* "the property" or "residence"), a single-family residential unit with legal description as follows:

> THE WEST HALF OF TRACT 2, HOMESTEAD ACRES DIVISION NO. 2. ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 78 OF PLATS, PAGES 48 AND 49, IN KING COUNTY, WASHINGTON.

1.1    Defendant, Andrey Bykhnyuk, purchased plaintiffs' residence at foreclosure auction sale on May 17, 2024. As such, Mr. Bykhnyuk claims an interest relating to the subject of this action and is so situated that disposing of the action in its absence may as a practical matter impair or impede his ability to protect his interest. *See* FRCP 19. Be it noted that Mr. Bykhnyuk is not a bona fide purchaser as the sale of plaintiffs' residence was void for the reasons laid out below.

1.2    Defendant Clear Recon Corp ("Clear Recon") is; a California corporation, doing business in King County, Washington, an affiliate of the law firm Aldridge Pite LLP, and was the non-judicial foreclosure trustee who sold plaintiffs' home. Clear Recon's principal place of business is located at 4375 Jutland Drive, San Diego California 92117. Clear Recon's registered agent in Washington is Registered Agent Solutions, Inc. in Tumwater, Washington.

1.3    Defendant, Bank of America N.A. (*hereinafter* "BANA"), is a foreign, multistate banking corporation doing business in King County, Washington. BANA is a national banking association with its principal place of business in North Carolina. The Ninth Circuit has held that "a national banking association is a citizen only of the state in which its main office is located." *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 715 (9th Cir. 2014). Because BANA's main office is in North Carolina, it is a citizen of North Carolina. Ortiz Decl., <u>Exhibit A</u>.

---



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

1.4    Whenever this complaint references any act of any defendant(s), that allegation shall mean that each defendants acted individually and jointly with the other defendant.

1.5    Plaintiff reserves the right to amend the parties and causes of action throughout this complaint to conform to the evidence.

## II. JURISDICTION AND VENUE

2.0    Paragraphs 1.1 to 1.7 as set forth above are hereby incorporated by this reference as though fully set forth herein.

2.1    This Court has original jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 which grants jurisdiction over actions presenting a federal question and 28 U.S.C. §1332 because plaintiffs and defendant are citizens of different states and the total amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.2    This Court has supplemental jurisdiction over plaintiff's claims arising under the laws of Washington pursuant to 28 U.S.C. §1367(a), because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy.

2.3    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events or omissions giving rise to the claims described herein occurred in the State of Washington and the subject property is situated in King County, Washington.

2.4    As of this date of this complaint, there is no action of any kind, in any U.S. Bankruptcy Court, related to this plaintiff, property, and/or action.

## III.    FACTS

3.0    Paragraphs 1.1 to 2.5 as set forth above are hereby incorporated by this reference as though fully set forth herein.



3.1     Plaintiffs are successors in interest to the property left to them by their mother, Twila

Potter, upon her passing in November of 2015.

3.2     Plaintiffs had moved on to the property in 1982 with their parents. At that time the

property was used as a horse farm, and in early 1983 when the deed of trust was granted

plaintiffs were using the property as a horse farm with thoroughbreds, mini-horses, a barn for

their hay, and a large number of egg laying chickens. Plaintiff Lyndell Potter was a licensed

farrier providing services to the local 4H community aside from his own livestock, and plaintiff

Nila Potter is a licensed veterinary technician who raises and competes mini horse breeds. Prior

to the inheritance the property was reduced to 1.1 acres due to county power line easements but it

remained under agricultural use through to the trustee sale date.

3.3     Plaintiffs mortgage consisted of a primary loan and a second HELOC, or line of credit.

3.4     Two days after their mother's passing, plaintiffs and their mother's funeral home sent

BANA copies of the applicable trust, will, and death certificate.

3.5     Upon turning sixty-two (62) years old in 2018, plaintiff Lyndell Potter applied for a 60%

senior property tax discount through King County's property tax division. These applications

take two years to process. Plaintiffs continued to pay the regular property tax assessed while

waiting for their senior discount application to process. In 2020, plaintiffs received the senior

property tax discount. Because of Covid, the April 30th due date of the first half to the property

tax was extended to June 1, 2020. Plaintiff Lyndell misunderstood, and believed the extension

was to June 30th, 2020. Plaintiff Lyndell paid the remaining discounted property tax for the year

on June 29th, 2020.

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

3.6     Then BANA stepped in and paid the full rate property tax. BANA then turned around and demanded plaintiffs pay it back for the full rate property tax it had blindly paid without communicating with plaintiffs first.

3.7     Plaintiffs declined to pay BANA what it demanded because plaintiffs had already paid the property tax, at the rate they applied for and were granted by King County.

3.8     Plaintiffs timely paid their monthly mortgage payments. They made their last payment on October 28, 2021 and BANA began refusing their payments in November 2021.

3.9     BANA refused to acknowledge plaintiffs were heirs to their mother's property. It denied receiving the trust, will, and plaintiffs' mother's death certificate, even after plaintiffs had sent those documents by certified mail and personally handed the documents directly to their local BANA branch manager. This pattern went on from 2021 to 2023.

3.10    From 2021 through 2023 BANA representatives called plaintiffs to collect on the mortgage loan while denying plaintiffs were heirs and refused to listen to plaintiffs or discuss the matter in any relevant detail.

3.11    By late 2022, BANA's continuing demand for money while refusing to acknowledge any and all notice of the documentary facts provided to it explaining Potters' circumstances, caused plaintiffs to decide to contact a reverse mortgage vendor. A reverse mortgage transaction would pay off thus eliminate BANA's mortgage and line of credit from plaintiffs' lives.

3.12    In early 2023 a BANA representative admitted to plaintiffs that BANA was in possession of the documents, but they were unreadable.

3.13    Sometime around 2023 BANA assigned the primary mortgage loan to another servicer, Shellpoint, then known as Specialized Loan Services (*hereinafter* "SLS"). BANA retained the servicing rights to the second, line of credit debt.

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

3.14    On March 23, 2023, plaintiffs signed BANA's Qualified Assumption Relationship Letter.

3.15    Plaintiffs received a Notice of Default from SLS dated April 3, 2023 and a Notice of Trustee Sale setting the first foreclosure sale date for June 2, 2023.

3.16    Shortly thereafter plaintiffs contacted the Metropolitan Urban League, where they engaged a housing counselor to enroll them in Washington's foreclosure mediation program and seek ways to resolve the loan default.

3.17    The parties commenced foreclosure mediation in June of 2023.  With the assistance of foreclosure mediation plaintiffs applied for and were granted enough funds from Washington's Homeowners Assistance Fund ("HAF") to get current with their primary loan, now serviced by SLS. The HAF funds were sent to SLS in around October/November of 2023 resolving the default of that portion of the mortgage.

3.18    Resolution of the primary loan default left only the second loan's default to resolve. As of 11/01/2021, plaintiffs owed an approximate balance on the BANA second mortgage of $7,764.45, and arrears were reported on 11/25/2021 of $17,389.35. Lowell Decl., pg. 14, Ex. E.

3.19    The company where plaintiffs applied for a reverse mortgage merged with Finance of America (FoA) who required plaintiffs to re-apply thus delaying the reverse mortgage application process. During this delay BANA's lawyers at the law firm of Aldridge Pite, LLC informed plaintiffs that the sale could be moved until the reverse mortgage is finalized, therefore BANA, through its lawyers, just required that plaintiffs keep in touch and advise as to progress on the reverse mortgage transaction.

3.20    Plaintiffs housing counselor at the Urban League as well as the reverse mortgage personnel at FoA (AAG in Lowell Decl.) stayed consistently in contact with BANA's local lawyers at Aldridge Pite. Lowell Decl., pgs. 6 through 14.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

3.21    On April 2, 2024 plaintiffs asked FoA for an update on progress with their reverse mortgage application, and FoA responded by informing plaintiffs that FoA and the title company were in communication with BANA's Aldridge Pite lawyer.

3.22    Plaintiffs continued to push FoA for updates when Clear Recon informed plaintiffs that the foreclosure sale was scheduled for May 17, 2024.

3.23    Plaintiffs' believed that their housing counselor kept Clear Recon, the trustee, and BANA's lawyers at Aldridge Pite informed about their reverse mortgage loan application.

3.24    Plaintiffs signed the closing documents for the reverse mortgage on May 15, 2024, and transaction confirmation was to be sent that same day to Clear Recon and BANA's lawyers. The pay-off of the remaining debt would not be sent until May 21, 2024. Plaintiffs believed that the May 15th closing had been discussed with Clear Recon by FoA and the Title company.

3.25    Without plaintiffs' knowledge, Clear Recon proceeded to sell plaintiffs' home at a foreclosure auction sale on May 17, 2024.

3.26    Plaintiffs' property was sold at foreclosure while plaintiffs were waiting for delivery of funds from the May 15th reverse mortgage closing which would have paid off all the debt owed to BANA. Selling the property on May 17, 2024 without notice did not leave plaintiffs enough time to prepare and file a timely injunction to enjoin the sale under RCW 61.24.130.

3.27    On May 24, 2024, FoA informed plaintiff that BANA rejected payment from the reverse mortgage proceeds which would have resolved the second mortgage debt.

3.28    On May 29.2024, the foreclosure sale buyer of plaintiffs' house posted a notice to vacate on plaintiffs' front door.

3.29    The buyer granted extensions of the vacate date and plaintiff still occupy their home. To date no wrongful detainer action has been served.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FOR DAMAGES ARISING FROM DEFENDANTS' VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT (RCW 19.86)

4.0    The purpose of Washington's Consumer Protection Act (CPA) is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. RCW 19.86.920.

4.1    Plaintiffs are borrowers defined in Washington's Deeds of Trust Act. RCW 61.24.005(3).

4.2    Defendant BANA is the mortgage loan beneficiary as defined under RCW 61.24.005(2).

4.3    Defendant Clear Recon is the foreclosure trustee as defined under RCW 61.24.005(16) and RCW 61.24.010.

4.4    Washington's Consumer Protection Act ("CPA") is a remedial statute liberally construed to serve its beneficial purposes. RCW19.86.920.

4.5    Plaintiffs' action here is timely because the nonjudicial foreclosure sale occurred May 17, 2024, less than four years ago. *See* RCW 19.86.120.

## COUNT I

### FOR DAMAGES ARISING FROM DEFENDANT TRUSTEE CLEAR RECON'S UNAUTHORIZED NONJUDICIAL FORECLOSURE SALE OF PLAINTIFFS' PROPERTY.

4.6    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

4.7    Washington State's Deeds of Trust Act permits trustees to foreclose on some, but not all, deeds of trust without judicial supervision. *Schroeder v. Excelsior Mgmnt. Grp.*, 177 Wn.2d 94, 397 P.3d 677 (2013)

4.8    Washington Deeds of Trust Act is clear that it shall be requisite to a trustee's sale,

> [T]hat the deed of trust contains a statement that the real property conveyed is not used principally for agricultural purposes; provided, ***if the statement is false on the date the deed of trust was granted or amended to include that statement, and false on the date of the trustee's sale, then the deed of trust must be foreclosed judicially***. Real property is used for agricultural purposes if it is used in an operation that produces crops, livestock, or aquatic goods ....

*Emph. added.* RCW 61.24.030(2).

4.9    When the deed of trust to plaintiffs' property was granted in 1983, the property was originally 2.5 acers and purchased as a horse farm. Plaintiffs moved in with their parents in December of 1982 and the deed of trust was granted in early 1983. The previous owners had raised livestock and crops for sustainable living, and upon purchasing the property plaintiffs adopted that set up to continue their own livestock activities. At that time plaintiff Lyndell Potter was a certified farrier providing farrier services on Saturdays for the kids in the local 4H and youth horse clubs that needed hoof work done on their competition horses. Sometime after 1983 King County reduced plaintiffs' property to 1.1 acres to make way for a power line easement.

4.10    On the date of the trustee sale, plaintiffs were still using the property agriculturally because they still had a number of mini horses on the property. Plaintiff, Nyla Potter, is a licensed Veterinary Technician and continues to raise and compete champion mini horses on the property. In addition to the horses, plaintiffs added cherry trees, blueberry bushes, raspberry vines, and Oregon grape all present on the property on the date of the trustee sale.

4.11    Defendant Clear Recon had no authority to foreclose nonjudicially on plaintiffs' property because its principal purpose was agricultural.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

4.12    Clear Recon foreclosed plaintiffs' deed of trust nonjudicially. Permitting the nonjudicial foreclosure sale of plaintiffs' agriculturally used property violated RCW 61.24.030.

4.13    Clear Recon's nonjudicial foreclosure of plaintiff's property is unfair or deceptive because it directly contravenes the statutory prohibition to foreclose deeds of trust secured by agricultural property nonjudicially. *See* RCW 61.24.030.

4.14    Permitting the sale of plaintiffs' agricultural property in a nonjudicial foreclosure auction is unfair or deceptive because by doing so, Clear Recon falsely implied that plaintiffs' property had no agricultural use when it obviously did.

4.15    Clear Recon's violations of Washington's CPA occurred in trade or commerce because it arose from its role as nonjudicial foreclosure trustee. Additionally, Clear Recon's violations of Washington's CPA occurred in trade or commerce because it arose from defendant BANA's debt collection activities. *See Evergreen Collectors v. Holt*, 60 Wn. App. 151, 803 P.2d 10 (1991); and  Clear Recon's violations of Washington's CPA occurred in trade or commerce because it arose from BANA's mortgage loan servicing activities. RCW 19.86.010(2)(3).

4.16    Clear Recon's unfair and deceptive acts alleged herein are injurious to the public because Clear Recon had, and has, the capacity to injure others. *See* RCW 19.86.093(3). Clear Recon's website state it provides trustee sales service in California and Alaska. *See* https://clearreconcorp.com/. King County Superior Court records alone show Clear Recon acted as trustee for hundreds of nonjudicial foreclosure auction and a defendant in many cases over the years. It has been a defendant in this District three times since 2008. Records from the U.S. Consumer Finance Protection Board (*hereinafter* "CFPB") show Clear Recon had, and has, the capacity to injure others because there are at least twenty-three (23) complaints involving Clear Recon filed with the CFPB from 2016 to 2024. Ortiz Decl. Exhibit B.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

4.17 Plaintiffs have been directly and proximately injured by Clear Recon's statutorily prohibited nonjudicial foreclosure sale. Plaintiffs have lost the title to their home, approximately $278,000 in equity, and any benefit plaintiffs would have enjoyed from their funded reverse mortgage. Lowell Decl., pg. 5, ¶XII.

4.18 Clear Recon's haste in nonjudicial foreclosure caused the plaintiffs damages.

4.19 But for Clear Recon's violation of RCW 61.24.030; its unauthorized sale of agricultural property, plaintiffs would not have lost title to their home, would not have lost their equity, nor would they have lost the benefits their reverse mortgage would have presented, namely pay-off of the second junior loan held by defendant BANA.

4.20 As a result of Clear Recon's unauthorized foreclosure sale, plaintiffs are now burdened with the added expense of attorney fees and costs, the continuing consequential financial injury of the growing principle (negative amortization), steadily increasing the difference between the present value of the debt now and the present value of the debt had it been lawfully serviced.

4.21 Plaintiffs were threatened by the buyer with "eviction." To date, plaintiffs have not been served with an unlawful detainer but are living with the threat of unnecessary displacement.

WHEREFORE, Plaintiffs respectfully requests that judgment be entered against defendant Clear Recon for:

    a. Cancelation and vacation of the May 17, 2024 foreclosure auction sale.

    b. Compensatory actual damages in the amount of $945,000 pursuant RCW 19.86.090.

    c. Treble damages in the amount of $25,000, as authorized by RCW 19.86.090

    d. Plaintiff's costs of the suit and attorney's fees pursuant to RCW 19.86.090.

    e. Such further relief as the Court deems just and proper.

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

# COUNT II

## FOR DAMAGES ARISING FROM DEFENDANT TRUSTEE CLEAR RECON'S BREACH OF ITS DUTY OF GOOD FAITH UNDER WASHINGTON'S DEEDS OF TRUST ACT (RCW 61.24.010.)

4.22    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

4.23    As foreclosure trustee Clear Recon had a duty of good faith to the borrower, beneficiary, and grantor. RCW 61.24.010(4).

4.24    Clear Recon's practice, in nonjudicial foreclosure, of deferring to BANA on whether to postpone a foreclosure sale and thereby failing to exercise its independent discretion as an impartial third party with duties to both parties is an unfair or deceptive act or practice and satisfies the first element of the CPA. Clear Recon failed to exercise its good faith duty to both sides and merely honored an agency relationship with BANA. *See Klem v. Washington Mutual Bank*, 176 Wn.2d 771, 792, 295 P.3d 1179, 1190 (Wash. 2013)

4.25    It was unfair or deceptive for Clear Recon to allow the foreclosure sale of plaintiffs' property knowing that a reverse mortgage was approved thus making pay-off of the subject debt imminent. It is understood industry-wide that when a reverse mortgage is approved, or closes, the result to the applicant, or borrower, is payment of a certain lump sum of money representing a percentage of the homeowner's equity. For plaintiffs, this amount was sufficient to pay-off the second mortgage loan which was the last of BANA's debt to be paid.

4.26    It was unfair or deceptive when Clear Recon failed to exhibit any good faith, and failed to exercise discretion with regard to the foreclosure sale of plaintiff's home. The reverse mortgage proceeds were delivered the week following the foreclosure sale of plaintiffs' home. Had Clear Recon exercised some discretion and extended the sale one more week BANA's loan would be

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

paid off and plaintiffs would have retained title to their home. Instead, Clear Recon acted in a way that could only benefit the beneficiary and obviously have deleterious effect on plaintiffs' title, and the reverse loan transaction.

4.27    It was unfair and deceptive when Clear Recon, the foreclosure trustee, and BANA, the beneficiary, used the same lawyer to evade and disregard obvious signs and communications that pay-off of the loan Clear Recon was foreclosing was imminent.

4.28    It was unfair or deceptive when legal counsel for both Clear Recon and BANA recharacterized statements made by plaintiffs and their housing counselor as not having to do with requests for extending foreclosure sale dates.

4.29    It was unfair or deceptive for Clear Recon to sell plaintiffs' home knowing the reverse mortgage proceeds would pay-off the loan within days as it closed on May 15, 2024.

4.30    Plaintiffs have been directly and proximately injured by Clear Recon's nonjudicial foreclosure sale of their home. Plaintiffs have lost the title to their home, approximately $278,000 in equity, and any benefit plaintiffs would have enjoyed from their funded reverse mortgage. Lowell Decl., pg. 5, ¶XII.

4.31     By deferring to BANA in nonjudicial foreclosure, Clear Recon caused plaintiffs' injuries. But for Clear Recon's deference to the beneficiary and its disregard for plaintiffs' communication regarding a reverse mortgage, plaintiffs would not have lost title to their home, lost their equity, or now be threatened with the prospect of costly displacement.

        WHEREFORE, Plaintiffs respectfully requests that judgment be entered against defendant Clear Recon for:

        a.    Cancelation and vacation of the May 17, 2024 foreclosure auction sale.

        b.    Compensatory actual damages in the amount of $945,000 pursuant RCW 19.86.090.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

c. Treble damages in the amount of $25,000, as authorized by RCW 19.86.090

d. Plaintiff's costs of the suit and attorney's fees pursuant to RCW 19.86.090.

e. Such further relief as the Court deems just and proper.

**COUNT III**

**FOR DAMAGES ARISING FROM DEFENDANT TRUSTEE
CLEAR RECON'S UNTIMELY NON-JUDICIAL FORECLOSURE
SALE OF PLAINTIFFS' PROPERTY. (RCW 61.24.040.(10))**

4.32    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

4.33    RCW 61.24.040(10) divests a trustee of authority to conduct a sale more than 120 days from the date in the Notice of Sale.

4.34    Defendant Clear Recon conducted the non-judicial foreclosure sale on plaintiffs' property no less than 350 days since the first trustee sale was scheduled for June 2, 2023. Between the first scheduled foreclosure sale on June 2, 2023 and the date of the actual sale, May 17, 2024, there were 350 days or 230 days beyond the statutory limit set by RCW 61.24.040(10). Ortiz Decl. Exhibit D.

4.35     As a result of Clear Recon's untimely sale, and failure to restart the foreclosure process, plaintiffs lost the title to their home, lost their equity of 41 years, and face the prospect of displacement and homelessness.

4.36    But for Clear Recon's untimely non-judicial foreclosure sale and its failure to comply with Washington's Deeds of Trust Act, plaintiffs' would not have experienced such serious financial losses and face the prospect of displacement and homelessness.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against defendant Clear Recon for:



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

   a.  Compensatory actual damages in the amount of $945,000 pursuant RCW 19.86.090.

   b.  Treble damages in the amount of $25,000, as authorized by RCW 19.86.090

   c.  Plaintiff's costs of the suit and attorney's fees pursuant to RCW 19.86.090.

   d.  Such further relief as the Court deems just and proper.

   e.  Remedies provided by RCW 19.86 are cumulative and not exclusive.

### COUNT IV

**WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86)
ENFORCEMENT OF WASHINGTON CONSUMER LOAN ACT
(RCW 31.04) AGAINST DEFENDANT BANK OF AMERICA N.A.**

4.37   Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

4.38   Because RCW Chapter 31.04 is enforced through RCW 19.86 *et seq.,* allegations of violations in RCW Chapter 31.04 are therefore CPA violations. RCW 31.04.208.

4.39   It is a violation of this chapter for a licensee, its officers, directors, employees, or independent contractors, or any other person subject to this chapter to: (a) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead any borrower, to defraud or mislead any lender, or to defraud or mislead any person; (b) Directly or indirectly engage in any unfair or deceptive practice toward any person; (c) Directly or indirectly obtain property by fraud or misrepresentation. RCW 31.04.027.

4.40   Plaintiff was a borrower pursuant RCW 31.04.015(4).

4.41   BANA serviced plaintiffs' second mortgage loan pursuant RCW 31.04.015(10) and (29).

4.42   Plaintiff's action here is timely because it is less than four years since BANA ignored information that confirmed pay off of plaintiffs' loan was imminent and sold plaintiffs' property just days prior to plaintiffs' pay-off delivery.



4.43    The legislature finds that the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act. RCW 31.04.208. Any violation of the CLA is not reasonable in relation to the development and preservation of business and is an unfair and deceptive act or practice and unfair method of competition in the conduct of trade or commerce. *Id*.

4.44    By unfairly or deceptively ignoring plaintiffs' communications regarding their approved reverse mortgage (RCW 31.04.027(1)(a)(b)), BANA and Clear Recon through the same lawyer, sold plaintiffs' property and then misrepresented that the plaintiffs never informed Clear Recon's and BANA's lawyer about the imminent reverse mortgage pay-off of BANA's second mortgage loan. *See* RCW 31.04.027(1)(c).

4.45    As a result of BANA's disregard for information that should have caused it to extend the sale date, plaintiffs lost the title to their home, lost their equity of 41 years, and face the prospect of displacement and homelessness.

4.46    But for BANA ignoring and denying notice of imminent pay-off, plaintiffs would not have lost the title to their home, or the equity they worked over 40 years to build.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against defendant BANA for:

a. Compensatory actual damages in the amount of $945,000 pursuant RCW 19.86.090.

b. Treble damages in the amount of $25,000, as authorized by RCW 19.86.090

c. Plaintiff's costs of the suit and attorney's fees pursuant to RCW 19.86.090.

d. Such further relief as the Court deems just and proper.

e. Remedies provided by RCW 19.86 are cumulative and not exclusive. RCW 31.04.208.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

# COUNT V

## INJUNCTIVE RELIEF TO ENJOIN DEFENDANT
## CLEAR RECON CORP. FROM FURTHER VIOLATIONS.

4.47    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

4.48    Plaintiffs may seek injunctive relief for violations of the Consumer Protection Act. RCW 7.24 *et seq.*; RCW 19.86.090.

4.49    Plaintiffs seek injunctive relief from this Court to enjoin defendant Clear Recon from continued disregard for its duty of good faith to borrowers under RCW 61.24.010(4).

4.50    By disregarding their statutory duty under RCW 61.24.10(4), defendant Clear Recon undermined Washington's Deeds of Trust Act by making nonjudicial foreclosure less efficient (nonjudicial foreclosure sale was not authorized on plaintiffs' agricultural property per RCW 61.24.030(2)), more costly (plaintiffs have had to hire lawyers to ascertain whether claims exist per *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885, 902 (2009)), and by literally missing an obvious opportunity to prevent wrongful foreclosure and thus clouding plaintiffs' title with a void nonjudicial foreclosure sale. See *Cox v. Helenius*, 103 Wn,wd 383, 387, 693 P.2d 683 (1985), *Bain v. Metro Mortgage Grp, Inc.*, 175 Wn2d 83, 94, 285 P.3d 34, 39 (2012)(First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.)

4.51    Plaintiff has reason to believe these actions make up a pattern and practice of behavior capable of, or which, impacts similarly situated consumers. Defendant Clear Recon Corp advertises that it does its business in more than one state. *See* RCW 19.86.093.

4.52    Injunctive relief is necessary to prevent further injury to plaintiffs and the public.

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

4.53    Injunctive relief should therefore issue as described herein.

WHEREFORE, Plaintiff respectfully requests injunctive relief be entered against defendant Clear Recon:

a.    Finding the foreclosure sale of May 17, 2024 void.

b.    Cancelling the foreclosure sale of May 17, 2024 and restoring plaintiffs' title.

c.    For Plaintiff's costs of the suit and attorney's fees pursuant to RCW 19.86.090.

d.    And for such further relief as the Court deems just and proper.

Remedies provided by RCW 19.86 are cumulative and not exclusive. RCW 31.04.208.


## SECOND CAUSE OF ACTION

**FOR DAMAGES ARISING FROM DEFENDANT BANA'S VIOLATIONS OF THE U.S. REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. §2601 *et seq*.**

5.0    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

5.1    RESPA was designed to protect borrowers from "certain abusive practices" that were being carried on by national banks. 12 U.S.C. §2601(a).

5.2    Bank of America (BANA) is a national bank chartered under the National Bank Act. Bank of America offers mortgage loans to homeowners, among other services. BANA was the servicer of plaintiff second mortgage loan foreclosed on May 17, 2024. 12 USC §2605(i)(2).

5.3    Plaintiffs' second loan is a federally related mortgage loan because it is secured by a subordinate lien on plaintiff's residential real property, made by a creditor as defined under 12 USC §2602(1)(A)(i), (iv) and 15 USC §1602(g).



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

5.4    RESPA's loan servicing provisions should be construed liberally to serve the statute's

remedial purpose. *Medrano v. Flagstar Bank FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012).

COUNT I

5.5    BANA, as servicer of plaintiffs' second and federally related mortgage, failed to take

timely action to respond to plaintiffs' requests to correct errors relating to allocation of

payments, final balances for purposes of paying off the loan, ***or avoiding foreclosure***, ...

*Emphasis added*, 12 U.S.C. §2605(k)(1)(C).

5.6    Plaintiffs' action here is timely because any action pursuant to the provisions of §2605

may be brought within three years and BANA's disregard for plaintiffs' requests to extend the

May 17, 2024 sale date occurred less than three years ago. *See* 12 U.S.C. §2614.

5.7    BANA failed to take timely action to respond to communications informing it and its

trustee, Clear Recon, that plaintiffs' reverse mortgage had been approved and pay-off of the

remaining debt on the first loan and the balance of second were was imminent. Lowell Decl. pgs.

6 through14. BANA should have responded by extending the foreclosure sale until the reverse

mortgage funding was confirmed (which occurred days after the foreclosure sale.) *Id*. By failing

to extend the sale even just one more week, BANA failed to avoid the unnecessary foreclosure of

plaintiffs' residential property.

5.8    As a result of BANA's disregard for information that should have prompted it to extend

the sale date, plaintiffs lost the title to their home, lost their equity of 41 years, and face the

prospect of displacement and homelessness.

5.9    As a direct and proximate result of BANA's lack of response to their request to extend

the foreclosure sale date, plaintiffs sustained actual damages in an amount to be proven at trial,

FIRST AMENDED COMPLAINT FOR
DAMAGES- 19

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

but not less than $1,000,000.00 exclusive of attorneys' fees, costs and interest. *See* 12 U.S.C. § 2605(f)(1)(A).

**COUNT II**

5.10     RESPA considers confirmed successors in interest, as borrowers. 12 C.F.R. §1024.30(d) and Reg. X, 12 C.F.R. §1024.38(b)(1)(vi).

5.11     Plaintiffs provided BANA with proof of their status as successors in interest on numerous occasions between 2015 and 2023.

5.12     BANA delayed confirming plaintiffs as successors in interest from November of 2015 until March 24, 2023. By evading plaintiffs' proof of their status as successors in interest for seven years, BANA essentially blocked plaintiffs from their confirmation as successors and accordingly their status as borrowers under 12 C.F.R. §1024.30(d).

5.13     As a result of BANA's delay acknowledging plaintiffs as successors in interest, plaintiffs were deprived of the opportunity to clear their title, negotiate and qualify for revised or perhaps more suitable terms with BANA, and to act with the authority to avoid unnecessary foreclosure of their residence. This in part caused plaintiffs to seek improved terms through county property tax discounts for seniors ultimately prompting the events giving rise to this lawsuit.

5.14     As a direct and proximate result of BANA's refusal and delay acknowledging plaintiffs' status as successors in interest, plaintiffs sustained actual damages in an amount to be proven at trial, but not less than $1,000,000.00 exclusive of attorneys' fees, costs and interest. *See* 12 U.S.C. § 2605(f)(1)(A).

WHEREFORE, Plaintiff respectfully requests judgment be entered against BANA for:

a.     Compensatory actual damages pursuant 12 U.S.C. §2605(f)(1)(A). Actual damages recoverable under RESPA include compensation for both economic losses and



emotional distress. *Lucero v. Cenlar FSB*, No. C13-0602RSL (W.D. Wash. Jan 28, 2016). Plaintiff's economic damages currently amount to approximately $945,000. Non-economic damages sought amount to $250,000.00.

b.  For each violation, any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of 12 U.S.C. §2605, in an amount not to exceed $2,000. 12 U.S.C. §2605(f)(1)(B).

c.  In addition to the amounts actual and statutory damages, the costs of the action, together with any attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances. 12 U.S.C. §2605(f)(3).

d.  Such further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION

**FOR DAMAGES ARISING FROM NEGLIGENCE
AGAINST DEFENDANTS, CLEAR RECON CORP
AND BANK OF AMERICA N.A.**

6.0     Paragraphs 1.0 to 3.30  as set forth above are hereby incorporated by this reference as though fully set forth herein.

6.1     Clear Recon is bound by its office to present the sale under every possible advantage to the debtor (plaintiffs) as well as to the creditor (BANA). As trustee, Clear Recon is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike. *Cox v. Helenius*, 103 Wn.2d 383, 389, 693 P.2d 683 (Wash. 1985). RCW 61.24.10(3) & (4). One manifestation of this duty is the requirement that the trustee take reasonable and appropriate steps to avoid sacrifice of the debtor's property and his interest. *Cox v. Helenius*, 103 Wn.2d at 389.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

6.2    Clear Recon had no right to initiate a nonjudicial foreclosure here because of the agricultural use of the property. RCW 61.24.030(2), Lowell Decl., ¶X, pgs. 4-5.

6.3    Clear Recon had no right to sell the property because doing so breached its duty of equal good faith to the plaintiffs and disregarded imminent pay off.

6.4    When Clear Recon and BANA refused to extend the auction date for plaintiffs' home, the home was sold for 56% of its value, which is so grossly inadequate as to amount to a negligent sacrifice of the plaintiffs' property and their interest. Lowell Decl., pg. 3, ¶VII.a.

6.5    The auction price was not merely inadequate but grossly inadequate as the sale occurred combined with significant procedural irregularities like defendants' initiation of a nonjudicial foreclosure sale on agricultural property statutorily reserved exclusively for judicial foreclosure. *See* RCW 61.24.030(2).

6.6    The auction price was not merely inadequate but grossly inadequate as the sale occurred combined with the trustee's (Clear Recon) breach of its duty of impartial good faith to both beneficiary and borrowers. See RCW 61.24.010(3) & (4). Clear Recon and BANA disregarded all signs and communications indicating that pay off of the debt being foreclosed was imminent.

6.7    The auction price was not merely inadequate but grossly inadequate as the sale occurred combined with BANA's dual tracking plaintiffs' efforts to obtain the reverse mortgage to pay off the debt with the non-judicial foreclosure process, leaving plaintiffs' no time to enjoin the nonjudicial foreclosure sale pursuant RCW 61.24.130.

6.8    Foreclosure sales are prohibited when borrowers, like plaintiffs, submit loss mitigation more than 37 days before the foreclosure sale. 12 CFR §1024.41. Plaintiffs had been discussing their reverse mortgage application as a method of loss mitigation since the initiation of foreclosure mediation in the fall of 2023, months prior to the foreclosure sale on May 17, 2024.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

6.9     Defendants' negligent act of permitting the foreclosure sale while knowing pay-off of the foreclosed debt was imminent caused economic damage to plaintiffs in the form of inaccessibility to 41 years-worth of equity sufficient to pay off the foreclosed debt, and the prospect of an unlawful detainer forcing plaintiffs to leave their home.

6.10    Defendants' negligent act of permitting the foreclosure sale while knowing pay-off of the foreclosed debt was imminent caused non-economic damage to plaintiffs in the form of heightened stress, confusion, and fear of property loss, displacement, and homelessness.

6.11    As a direct and proximate result of defendant Clear Recon's and BANA's negligence, plaintiffs sustained economic damages in an amount to be proven at trial, but not less than $945,000, exclusive of attorneys' fees, costs and interest.

6.12    As a direct and proximate result of defendant Clear Recon's and BANA's negligence, plaintiffs sustained non-economic damages in an amount to be proven at trial, but not less than $500,000, exclusive of attorneys' fees, costs and interest.

6.13    Plaintiffs are entitled to recover damages because defendants conducted the foreclosure sale negligently, in bad faith, to plaintiffs' detriment, and caused plaintiffs damages. Leen, David A. *Wrongful Foreclosures in Washington* 49 Gonzaga Law Review 331, 369-370 (2013/2014).

6.14    Plaintiffs are entitled to judgment in their favor for damages caused and proximately caused by defendants Clear Recon and BANA's negligence, the amounts of damages to be proven at trial.

WHEREFORE, Plaintiffs request judgment be entered against Clear Recon for:

a.    Actual damages for economic losses and tortious infliction of emotional distress.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

b. In addition to the amounts actual, the costs of the action, together with any attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

c. Such further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**

**FOR DAMAGES ARISING FROM SLANDER OF TITLE**
**AGAINST CLEAR RECON AND BANK OF AMERICA N.A.**

7.0    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

7.1    Plaintiff's action here is timely because the statute of limitations for slander of title is three years and plaintiffs' house was sold at auction on May 17, 2024. RCW 4.16.080(2); *Mayer v. Huesner*, 126 Wn. App. 114, 123 (2005), *cited in Adams v. Wilimington Tr., N.A.*, CASE NO. 3:18-cv-05598-RJB (W.D. Wash. Oct 23, 2018).

7.2    Acting as alleged herein Clear Recon sold a property at foreclosure after plaintiffs' reverse mortgage on the same property closed on May 15 but before the proceeds of that closing were delivered to pay off the debt on May 21. In doing so, Clear Recon changed plaintiffs' ownership status to that of non-owner, leaving plaintiffs without the proceeds from the reverse mortgage and leaving the reverse mortgage lender without a security. In other words, plaintiffs no longer had a clear title for the reverse mortgage. By permitting the foreclosure sale on May 17 Clear Recon maliciously ensured plaintiffs could not access their equity through the reverse mortgage they were approved for weeks prior.

7.3    Clear Recon's foreclosure sale resulted in the pecuniary loss to plaintiffs as it eliminated plaintiffs' access to their equity. Plaintiffs' equity in their property is their largest and only asset



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

and Clear Recon sacrificed that equity for a foreclosure sale that only recovered 56% of the property's value. This injured plaintiffs by making the equity in their property inaccessible, and exposing them to the threat of displacement and homelessness.

7.4    Clear Recon's reckless and malicious foreclosure sale defeated plaintiffs' clear title disqualifying them from the reverse mortgage sale.

7.5    As a direct and proximate result of defendant Clear Recon's slander of title, plaintiffs were damaged in amounts to be proven at trial, but not less than $945,000 in economic damages and $250,000.00 in non-economic damages, exclusive of attorneys' fees, costs and interest.

7.6    Plaintiffs are entitled to judgment in their favor for damages caused and proximately caused by defendant Clear Recon's negligence, the amounts of damages to be proven at trial.

WHEREFORE, Plaintiffs request that judgment be entered against Clear Recon for:

a.   Compensatory actual damages for both economic losses and emotional distress.

b.   In addition to the amounts actual, the costs of the action, together with any attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

c.   Such further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### FOR DAMAGES ARISING FROM BANA'S TORTIOUS INTERFERENCE WITH A CONTRACT OR EXPECTANCY

8.0    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein. Plaintiffs had the right to expect that the Trustee would exercise its duties owed to them and would act in accordance with the agreements embodied in the Deed of Trust, and Washington's Deeds of Trust Act. See RCW 61.24.010(3)(4).



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

8.1     As the beneficiary of the Deed of Trust, BANA knew of the relationship between the plaintiffs and their reverse mortgage lender, Finance of America (FoA).

8.2     BANA caused the Trustee to disregard plaintiffs' interests and act exclusively for the benefit of BANA in connection with foreclosing on plaintiffs' second deed of trust. In doing so, BANA intentionally interfered with the relationship and expectancy that plaintiffs had with the reverse mortgage originator, FoA.

8.3     Through Clear Recon, BANA interfered with plaintiffs' relationship and expectancy with their reverse mortgage originator in order to expedite the nonjudicial foreclosure sale. Moreover, under the circumstances, expediting the foreclosure sale was for an improper purpose because it caused the Trustee to sacrifice plaintiffs' equity in their property.

8.4     BANA's interference with plaintiffs' contract and expectancy with the FoA caused plaintiffs to suffer damages to be proved at the time of trial which are believed to be in excess of $945,000.

WHEREFORE, Plaintiffs respectfully request judgment be entered against BANA for:

a.   Compensatory actual damages for both economic losses and emotional distress.

b.   In addition to the amounts actual, the costs of the action, together with any attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

c.   Such further relief as the Court deems just and proper.

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF AGAINST DEFENDANT BYKHNYUK

9.0    Paragraphs 1.0 to 3.30 as set forth above are hereby incorporated by this reference as though fully set forth herein.

9.1    Plaintiffs seek judgment for declaratory relief under RCW 7.24 *et seq* and FRCP 57.

9.2    The foreclosure sale of May 17, 2024 is void because the purchase price is inadequate and the purchase price is inadequate because of the unfair and irregular procedures employed to sell plaintiffs' property at foreclosure sale. Those unfair and irregular procedures include selling plaintiffs' agricultural property in a non-judicial foreclosure sale in violation of RCW 61.24.030(2), selling plaintiffs' property nonjudicially beyond the statutorily mandated 120-day limit in violation of RCW 61.24.040(10), as well as the trustee's breach of its duty of good faith to the borrower under RCW 61.24.010(4).

9.3    As a result of Clear Recon's disregard for plaintiffs' agricultural use, its' failure to restart the foreclosure process after 120 days, and its failure to exercise its own discretion by not extending the foreclosure sale according to information provided to it, plaintiffs lost the title to their home, lost their equity of 41 years, and face the prospect of displacement and homelessness.

9.4    The purchaser, defendant Bykhnyuk is a sophisticated businessman.

9.5    The purchaser, Andrey Bykhnyuk, (*hereinafter* "purchaser" or "buyer") is the owner of a number of businesses, one namely, Andy Investments LLC, to which defendant Bykhnyuk is the owner, governor, and registered agent. Ortiz Decl. <u>Exhibit C</u>.

9.6    As a prudent investor, Defendant Bykhnyuk knew or should have known about the property's agricultural use, the sale delay beyond 120 days, and the 56% discount on the property price alerting him to the flaws in the foreclosure proceedings.

9.7 The low price should have alerted Defendant Bykhnyuk to discrepancies between the price and the underlying debt.

9.8 The delay exceeding 120 days should have alerted Defendant Bykhnyuk to the fact that plaintiffs were likely trying to cure the loan default to prevent a foreclosure.

9.9 The flaws in the non-judicial foreclosure process (agriculturally used land offered in non-judicial foreclosure, holding the sale beyond 120 days, and a sale price of 56% of fair market value) should have alerted defendant Bykhnyuk of the likelihood that the trustee was breaching its duty of good faith.

9.10 Plaintiffs have reason to believe these actions make up a pattern and practice of behavior capable of, or which, impacts similarly situated consumers.

9.11 Declaratory judgment cancelling the sale as void is necessary to quiet title and prevent further injury to plaintiffs and the public.

9.12 Specifically plaintiffs seek a declaratory judgment cancelling the foreclosure sale of May 17, 2024 because the sale was void due to violations of the Deeds of Trust Act. *Supra.*

## V.    PRAYER FOR RELIEF

Plaintiffs, having fully pled their complaint above, pray for the following relief:

### FIRST CLAIM
### Washington's Consumer Protection Act.

10.0. Judgment for Damages under Washington's CPA are cumulative.

10.1 Declare the May 17, 2024 foreclosure auction sale void and cancelled.

10.2 Therefore, under Count I of the first cause of action, plaintiff currently claims $945,000 as actual damages under the CPA, the capped treble damages under RCW 19.86.090 of

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

$25,000.00, and attorney fees and cost to be determined by the court. The financial injury related to the growing principle are on-going and increasing.

10.3     Under Count II of the first cause of action, plaintiff currently claims $945,000 as actual damages under the CPA, the capped treble damages under RCW 19.86.090 of $25,000.00, and attorney fees and cost to be determined by the court. The financial injury related to the growing principle are on-going and increasing.

10.4     Under Count III of the first cause of action, plaintiff currently claims $945,000 as actual damages under the CPA, the capped treble damages under RCW 19.86.090 of $25,000.00, and attorney fees and cost to be determined by the court. The financial injury related to the growing principle are on-going and increasing.

10.5     Under Count IV of the first cause of action, plaintiffs seek injunctive relief necessary for quieting title of the property to plaintiffs along with an award for attorney fees and costs.

**SECOND CLAIM**
**Real Estate Settlement Procedures Act.**

10.6     For judgment in plaintiff's favor and against defendants awarding actual damages to plaintiff for violations of the U.S. Real Estate Settlement Procedures Act ("RESPA"). Judgment for Damages under the RESPA are cumulative.

10.7     Therefore, under the third cause of action, plaintiff currently claims $945,000 as economic damages, and $250,000 for non-economic damages exclusive of attorney fees, costs, and prejudgment interest. Attorney fees and cost to be determined by the court. The injury related to the loss of equity and threat of displacement are on-going.



936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

## THIRD CLAIM
### Negligence

10.8    For judgment in favor of Plaintiffs and against defendants awarding damages to Plaintiffs on their Negligence claim in an amount to be proven at trial together with costs and interest.

10.9    Plaintiffs currently claim $945,000 as economic damages, and $250,000 for non-economic damages for RTR's negligence, exclusive of attorney fees, costs, and prejudgment interest. Attorney fees and cost to be determined by the court. The financial injury related to the loss of equity and growing principle are on-going and increasing.

10.10   For any other or further relief this Court may determine to be just or equitable.

## FOURTH CLAIM
### Slander of Title

10.11   For judgment in favor of Plaintiffs and against defendants awarding damages to Plaintiffs on their slander of title claim in an amount to be proven at trial together with costs and interest.

10.12   Plaintiffs currently claim $945,000 as economic damages, and $250,000 for non-economic damages for defendants' negligence, exclusive of attorney fees, costs, and prejudgment interest. Attorney fees and cost to be determined by the court. The financial injury related to the loss of equity and growing principle are on-going and increasing.

10.13   For any other or further relief this Court may determine to be just or equitable.

## FIFTH CLAIM
### Tortious Interference with Plaintiffs' Contract or Expectancy

10.14   For judgment in favor of Plaintiffs and against defendants awarding damages to Plaintiffs on their slander of title claim in an amount to be proven at trial together with costs and interest.

10.15   Plaintiffs currently claim $945,000 as economic damages, and $250,000 for non-economic damages for defendants' negligence, exclusive of attorney fees, costs, and

NWCLC Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

prejudgment interest. Attorney fees and cost to be determined by the court. The financial injury related to the loss of equity and growing principle are on-going and increasing.

10.16   For any other or further relief this Court may determine to be just or equitable.

**SIXTH CLAIM**
**DECLARATORY RELIEF**

Plaintiffs seek Declaratory Judgment cancelling the sale as void and quieting title to prevent further injury to plaintiffs and the public.

Dated this 9th day of August, 2024.

Northwest Consumer Law Center

_____
Arthur E. Ortiz, WSBA No. 26676
Attorney for Plaintiffs

NWCLC  Northwest
Consumer Law
Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989

VERIFICATIONS

<u>Nyla F. Potter</u>, declares UNDER PENALTY OF PERJURY, under the laws of the State of Washington, that the following is true and correct; she is a co-plaintiff in this action; has reviewed the foregoing complaint, knows the contents thereof, and believes the same to be true.

    Dated at Kent, Washington, this 9th day of August, 2024.


_____
Nyla F. Potter
Plaintiff



<u>Lyndell R. Potter</u>, declares UNDER PENALTY OF PERJURY, under the laws of the State of Washington, that the following is true and correct; he is a co-plaintiff in this action; has reviewed the foregoing complaint, knows the contents thereof, and believes the same to be true.

    Dated at Kent, Washington, this 9th day of August, 2024.


_____
Lyndell R. Potter
Plaintiff



**NWCLC** Northwest Consumer Law Center

936 N. 34th St. Ste. 300
Seattle, WA 98103
Tele: 206-805-0989
Fax: 206-805-0989