1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                             AT SEATTLE

10

11   NYLA F. POTTER et al.,                    CASE NO. 2:24-cv-01173-LK

                         Plaintiffs,           ORDER GRANTING BANK OF
12                                             AMERICA'S MOTION TO
          v.                                   DISMISS
13
     CLEAR RECON CORP. et al,
14
                         Defendants.
15

16          This matter comes before the Court on Defendant Bank of America N.A.'s Amended

17   Motion to Dismiss. Dkt. No. 27. Defendants Clear Recon Corporation and Andrey Bykhnyuk have

18   joined Bank of America's motion. Dkt. Nos. 31, 33. For the reasons stated below, the motion is

19   granted.

20                              I.    BACKGROUND

21          Plaintiffs Nyla and Lyndell Potter are siblings residing in King County, Washington. Dkt.

22   No. 13 at 2. They co-own a single-family residential unit located at 19705 S.E. 284th St., Kent,

23   WA 98042-8639. *Id.* They moved into the home in 1982 with their parents and inherited it in 2015

24   after the passing of their mother. *Id.* at 4. Two days after their mother's passing, they and their

mother's funeral home sent Bank of America copies of the applicable trust, will, and death certificate. *Id.* The Potters allege that at all times relevant to the complaint, the property has been principally used for agricultural purposes. *Id.* at 1, 4.

In 2018, Lyndell Potter turned 62 and applied for a 60% senior property tax discount through King County's property tax division. *Id.* at 4. His application was granted in 2020. *Id.* That same year, the applicable property tax deadline was extended to June 1, 2020 due to the Covid-19 pandemic. *Id.* Lyndell Potter, mistakenly believing the extension was to June 30, 2020, paid the remaining discounted property tax for the year on June 29. *Id.* The Potters allege that Bank of America then paid the full (non-discounted) property tax and demanded that they pay it back in that amount. *Id.* at 5. The Potters refused to do so because they had already paid the property tax at the applicable discounted rate. *Id.*

In the meantime, the Potters had been making monthly payments toward their mortgage. *Id.* Their mortgage consisted of a primary loan and a second home equity line of credit. *Id.* at 4. Confusingly, the Potters allege both that Bank of America began refusing their monthly mortgage payments starting in November 2021, but also that from 2021 to 2023, Bank of America would call them to demand that the mortgage loans be paid. *Id.* at 5 (compare paragraphs 3.8 and 3.10). In any case, no payments were processed by Bank of America from November 2021 onward. *See id.* In 2022, the Potters contacted a reverse mortgage lender to obtain funds to pay off the mortgage loans owed to Bank of America. *Id.*

Separately, between 2021 and 2023, Bank of America would not acknowledge that the Potters were heirs to their mother's property and denied receiving any documentation after her passing. But in early 2023, Bank of America admitted it had received documents purportedly showing that the Potters were heirs to the home. *Id.* However, it told the Potters that the documents were unreadable. *Id.*

1    Also in early 2023, Bank of America assigned the primary loan to another servicer,

2    Specialized Loan Services ("SLS"), while retaining the rights to the Potters' home equity line of

3    credit. *Id.* Then, in mid-2023, SLS sent the Potters a Notice of Default and a Notice of Trustee

4    Sale, which set the first foreclosure sale date for June 2, 2023. *Id.* at 6. The parties successfully

5    mediated and resolved the default on the primary mortgage loan. *Id.*

6    This left only the default on the home equity line of credit to resolve. *Id.* As of November

7    1, 2021, the Potters owed a balance of $7,764.45, and arrears of $17,389.35 were reported on

8    November 25, 2021. *Id.* at 6.[1] In March 2024, the Potters notified Bank of America's lawyer that

9    their reverse mortgage had been delayed and their application needed to be resubmitted. Dkt. No.

10   14 at 11. Around that time, the Potters became aware that a foreclosure sale on their property was

11   scheduled for May 17, 2024. Dkt. No. 13 at 1, 7.

12   Two days before the foreclosure sale, on May 15, 2024, the Potters closed on their reverse

13   mortgage, but the funds would not be in place to pay off the home equity line of credit until May

14   21, 2024, four days after the scheduled foreclosure sale. *Id.* at 7. Clear Recon nonetheless

15   proceeded to sell their home on May 17, 2024. *Id.* Bank of America then rejected the funds from

16   the reverse mortgage. *Id.* The Potters allege that Bank of America and Clear Recon, through the

17   same lawyer, ignored their communications that the reverse mortgage had been approved and that

18   funds would be disbursed imminently. *Id.* at 16.

19   The Potters filed this lawsuit on August 1, 2024 and amended their complaint on August

20   9. Dkt. Nos. 1, 13. The operative complaint names Bank of America, Clear Recon, and Andrey

21   Bykhnyuk (the buyer of the home) as defendants. Dkt. No. 13 at 1–2. The Potters assert state law

---

[1] A letter from Bank of America (attached to a declaration which the Potters incorporate into their complaint, *see* Dkt. No. 13 at 6, 11, 13, 19, 22; Dkt. No. 14) states that "mediation proceedings ended in October 2023 and the mediation gave 60 days to close on the reverse mortgage." Dkt. No. 14-6 at 2.

ORDER GRANTING BANK OF AMERICA'S MOTION TO DISMISS - 3

claims for negligence, slander of title, tortious interference with contract, and violation of Washington's Consumer Protection Act, as well as a federal claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. *Id.* at 8–26. They also seek a declaratory judgment "cancelling the foreclosure sale of May 17, 2024 because the sale was void due to violations of the Deeds of Trust Act." *Id.* at 27–28.

Bank of America filed a motion to dismiss the amended complaint, Dkt. No. 27, which is joined by co-defendants Clear Recon and Bykhnyuk, Dkt. Nos. 31, 33.

## II.  DISCUSSION

### A.  Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Potters assert a federal claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. Dkt. No. 13 at 18–21. The Court has supplemental jurisdiction over the Potters' state law claims because they arise from the same underlying facts as the federal claim. *See* 28 U.S.C. § 1367(a); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together." (quotation marks omitted)).[2]

Venue is proper in this Court because a substantial part of the events giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2). The property that is the subject of the action is also situated in this district. *Id.*

---

[2] Although the Potters claim that the Court also has subject matter jurisdiction under 28 U.S.C. § 1332, they fail to allege Mr. Bykhnyuk's citizenship. Dkt. No. 13 at 2–3. Indeed, they suggest in their opposition to the motion to dismiss that he is a citizen of Washington, depriving the Court of diversity jurisdiction. Dkt. No. 35 at 6–7 (asserting that Mr. Bykhnyuk's "home address" is in Normandy Park, Washington).

1    **B.    Legal Standards**

2        When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must

3    assume the truth of the complaint's factual allegations and credit all reasonable inferences arising

4    from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, the court

5    "need not accept as true conclusory allegations that are contradicted by documents referred to in

6    the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

7    Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible

8    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

9    "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

10   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11   (2009). Although "detailed factual allegations" are not required, a complaint must include "more

12   than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers

13   'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

14   do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

15   **C.    The Potters Fail to State a RESPA Claim Against Bank of America (Second Cause of Action)**

16        Bank of America moves to dismiss the Potters' claim under the Real Estate Settlement

17   Procedures Act ("RESPA"). Dkt. No. 27 at 6–8. The Potters allege two violations of RESPA, as

18   described below. Both fail to state a claim.

19        1.    <u>The Potters Have Not Alleged a Violation of Section 2605(k) (Count I)</u>

20        RESPA's Section 2605(k) requires federal mortgage loan servicers to, among other things,

21   "take timely action to respond to a borrower's requests to correct errors relating to allocation of

22   payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other

23   standard servicer's duties." 12 U.S.C. §2605(k)(1)(C). The Potters allege that Bank of America

24

violated that requirement "[b]y failing to extend the sale even just one more week" to allow the funds from their reverse mortgage to be disbursed. Dkt. No. 13 at 19. Bank of America argues that "conducting a noticed sale pursuant to a long-standing default is not a violation of RESPA," and notes that the Potters did not "submit a request to [Bank of America] that the sale be postponed, or otherwise seek to enjoin the sale." Dkt. No. 27 at 7.

The Court agrees that Bank of America's decision to proceed with the foreclosure sale did not violate Section 2605(k). Most obviously, that section requires Bank of America "take timely action to respond to a borrower's requests to correct errors," 12 U.S.C. §2605(k)(1)(C), and the Potters do not allege that they requested that Bank of America correct any error. *Julius v. Wells Fargo Bank, N.A.*, No. 16-CV-516-JL, 2017 WL 1592379, at *7 (D.N.H. Apr. 28, 2017) ("[Section] 2605(k)(1)(C) does not make it unlawful to fail to respond to *any* requests to avoid foreclosure, but, as relevant here, to 'requests to *correct errors* relating to[,]' among other things, 'avoiding foreclosure.' . . . . That is, while a servicer is obligated by § 2605(k)(1)(C) to respond to requests to correct errors relating to avoiding foreclosure, § 2605(k)(1)(C) does not impose an obligation on servicers to respond favorably to *all* requests to avoid foreclosure, as plaintiff would have it do.") (citation modified)). The statute enumerates several types of errors, which the implementing regulation expands upon. *See* 12 C.F.R. § 1024.35 (outlining error resolution procedures for mortgage servicers). There are three types of errors outlined in the regulation that relate to foreclosure, none of which fit here:

> (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
>
> (9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
>
> (10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

12 C.F.R. § 1024.35. The Potters do not argue otherwise. Dkt. No. 35 at 10–11.

Next, the amended complaint does not identify a specific request to which Bank of America did not timely respond. The claim fails for this reason, too. Thus, the Potters' RESPA claim based on Section 2605(k) fails. Count I of the second cause of action is dismissed.

2.  There is No Private Right of Action to Enforce Section 1024.38 of Regulation X (Count II)

RESPA's implementing regulation requires that federal mortgage loan servicers follow certain policies and procedures in confirming successors in interest to the property upon the death of a borrower. 12 C.F.R. § 1024.38(b)(1)(vi). These include the requirements to "promptly facilitate communication with any potential or confirmed successors in interest regarding the property," "promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property," and "[u]pon the receipt of such documents, promptly make a confirmation determination and promptly notify the person, as applicable, that the servicer has confirmed the person's status[.]" *Id.* The Potters allege that Bank of America violated those regulations by taking seven and a half years to confirm them as successors in interest, which deprived them "of the opportunity to clear their title, negotiate and qualify for revised or perhaps more suitable terms with [Bank of America], and to act with the authority to avoid unnecessary foreclosure of their residence." Dkt. No. 13 at 20.

Whatever its potential merits, the claim must be dismissed for lack of a private right of action. *See, e.g.*, *Khurana v. Clear Recon Corp.*, No. 4:24-CV-01741-KAW, 2025 WL 870416, at *5 (N.D. Cal. Mar. 20, 2025) ("district[] courts across the country have found that there is no private enforcement of this provision," and there is no private right of enforcement of that section through 12 U.S.C. § 2605(f)); *Vanisi v. Citibank, N.A.*, No. 23-CV-02835-RFL, 2024 WL 1091196, at *2 (N.D. Cal. Feb. 26, 2024) ("this section does not provide a private right of action");

1    *Dahar v. Pennymac Loan Servs., LLC*, No. 2:23-CV-01020-CDS-MDC, 2024 WL 402732, at *3

2    (D. Nev. Feb. 1, 2024) ("There is no private right of action for . . . 12 C.F.R. § 1024.38."); *Est. of*

3    *Brantner v. Ocwen Loan Servicing, LLC*,  No. C17-582 TSZ, 2021 WL 3053055, at *3 (W.D.

4    Wash. July 20, 2021). When it promulgated Part 1024 of Regulation X, the Consumer Financial

5    Protection Bureau specifically "restructur[ed] the final rule" to avoid providing "private liability

6    for violations of § 1024.38[.]" *See* Mortgage Servicing Rules Under the Real Estate Settlement

7    Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10779 (Feb. 14, 2013). Only the Consumer

8    Financial Protection Bureau can enforce violations of that regulation. *Id.* at 10778–79 ("The

9    Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for

10    compliance with and violations of § 1024.38 respectively, would provide robust consumer

11    protection without subjecting servicers to the same litigation risk and concomitant compliance

12    costs as civil liability for asserted violations of § 1024.38."). Thus, Count II of the second cause

13    of action is dismissed.

14    **D.    The Potters Fail to State a CPA Claim Against Bank of America or Clear Recon (First Cause of Action)[3]**

15          The Potters' claims under Washington's Consumer Protection Act ("CPA") fail against

16    both Bank of America and Clear Recon. To state a CPA claim, the Potters must allege (1) an unfair

17    or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest

18    (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair

19    or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

20    *Co.*, 719 P.2d 531, 533 (Wash. 1986). An act or practice can be unfair or deceptive if it violates

21    another statute or the public interest. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 638–40

---

[3] Although the Potters ostensibly bring their CPA claim against all Defendants, that cause of action only contains particularized allegations against Bank of America and Clear Recon, not Andrey Bykhnyuk. Dkt. No. 13 at 8. For this reason, the Court does not construe the amended complaint as alleging a CPA claim against Bykhnyuk.

(Wash. 2024), *as amended* (Aug. 16, 2024). "Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (citation modified). Deceptive conduct will usually also be unfair, but "an act or practice can be unfair without being deceptive." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). Where the relevant operative facts are not disputed, this element is a question of law. *Young*, 317, 472 P.3d at 994.

1.  The CPA Claims Against Clear Recon Fail

The Potters premise their CPA claims against Clear Recon on alleged violations Washington's Deed of Trust Act ("DTA"). Dkt. No. 13 at 8–15; *see Trujillo v. Nw. Tr. Servs., Inc*., 355 P.3d 1100, 1107–08 (Wash. 2015) (plaintiff may "bring a CPA claim based on a defendant's wrongful conduct during a nonjudicial foreclosure process").

*First*, the Potters allege that Clear Recon improperly nonjudicially foreclosed on property that is principally used for agricultural purposes. Dkt. No. 13 at 8–10 (Count I). Under the DTA, property that is used primarily for agriculture may not be nonjudicially foreclosed upon. *See Schroeder v. Excelsior Mgmt. Grp., LLC*, 297 P.3d 677, 686 (Wash. 2013) ("if [petitioner's] property was primarily agricultural, then the trustee lacked the statutory power to foreclose nonjudicially."). The Potters' claim fails because they have not plausibly alleged that their property was used for agriculture at the time of the trustee sale—and certainly not that agriculture was its primary use.

Under the DTA, "[r]eal property is used for agricultural purposes if it is used in an operation that produces crops, livestock, or aquatic goods." RCW 61.24.030(2). Although the Potters allege that on the date of the trustee sale there were fruit trees and miniature horses on the property, Dkt. No. 13 at 9, they do not allege that they sell the fruit (as crops) or horses (as livestock) as part of a commercial enterprise. And even if they did adequately allege an agricultural

1    use, they have not alleged that agriculture was the property's *primary* use. For example, in *Hoyte*

2    *v. Recontrust Co. N.A.*, No. C11-5389BHS, 2011 WL 2670116 (W.D. Wash. July 7, 2011), the

3    court found that property was not primarily used for agriculture despite allegations that the

4    property "contain[ed] all of the original apple trees, the fruit of which are harvested annually for

5    commercial sale," *id.* at *3. The court reasoned that "[e]ven if the Property is used to produce some

6    apples that are sold commercially," plaintiff had failed "to allege that this production of apples is

7    the 'principal' use of the Property." *Id.* So too here. Even if the Potters had alleged an agricultural

8    use, there are no non-conclusory allegations showing that agriculture was its principal use.

9            Beyond the pleading deficiencies, the Potters' claim that their property is primarily used

10   for agriculture is also contradicted by their reverse mortgage application, which is attached as an

11   exhibit to the declaration of Randall Lowell, which is incorporated into the amended complaint.

12   No. 13 at 22 (citing the declaration for the proposition that the primary use of the property was

13   agricultural). Even though Lowell's declaration states that "[a]t the time the property was sold the

14   home and land was being used for agricultural purposes," Dkt. No. 14 at 4, the reverse mortgage

15   deed of trust which is attached as an exhibit to his declaration and recorded on May 21, 2024

16   specifically states as that "[t]he property is not used principally for agricultural purposes," Dkt.

17   No. 14-8 at 13; *see also* Dkt. No. 14-4 at 15 (2001 deed of trust, also stating that the property was

18   not being principally used for agriculture). This squarely forecloses the Potters' argument that their

19   property was used principally for agriculture.[4]

20

21   ────────────────

[4] Although the Court does not need to address it further here, it finds the Potters' conflicting statements on the
property's use concerning. It is hard to see how their position in this litigation can be reconciled with their

22   representation about the property's use in the reverse mortgage application. Hypothetically, if the Court were to rule
in the Potters' favor on the property's agricultural use, it would appear to necessarily follow that they misrepresented

23   (even if unintentionally) the property's use in order to obtain a reverse mortgage. In other words, the Potters seek to
benefit from a misrepresentation one way or the other: if they were *not* truthful about the property's use in their

24   application for the reverse mortgage, it appears that they would not have had the funds from such mortgage upon
which they premise most of their claims, Dkt. No. 14-4 at 9 ("Borrower shall also be in default if Borrower, during

1    *Second*, the Potters allege that Clear Recon breached its duty of good faith under the DTA

2    by not postponing the foreclosure sale to allow the reverse mortgage funds to be paid out (Count

3    II). Dkt. No. 13 at 12–14; *see also* Wash. Rev. Code § 61.24.010(4) ("The trustee or successor

4    trustee has a duty of good faith to the borrower, beneficiary, and grantor."). This too fails. Even

5    assuming without deciding that Clear Recon would have been required to delay the sale had it

6    known of the imminent reverse mortgage funds, the amended complaint does not establish in non-

7    conclusory terms that Clear Recon was aware that the reverse mortgage had closed before the

8    foreclosure sale—let alone that funds would be paid out imminently. Even the conclusory

9    allegations contradict each other; for example, the Potters allege both that Clear Recon "allow[ed]

10   the foreclosure sale . . . [despite] knowing that a reverse mortgage was approved," but also that

11   Clear Recon "evade[d]" that information and "disregard[ed] obvious signs and communications

12   that pay-off of the loan Clear Recon was foreclosing was imminent." Dkt. No. 13 at 12–13. And

13   beyond the confusing allegations regarding Clear Recon's knowledge, the amended complaint

14   does not allege *how* Clear Recon became aware that the reverse mortgage had closed. For example,

15   it alleges that "Plaintiffs signed the closing documents for the reverse mortgage on May 15, 2024,

16   and transaction confirmation ***was to be sent*** that same day to Clear Recon and BANA's lawyers."

17   *Id.* at 7 (emphasis added). Notably, the amended complaint does not allege that confirmation *was*

18   sent, only that the plan was to send Clear Recon's lawyers notice that the transaction had closed.

19   The other allegations suggest that the Potters *believed* that Clear Recon was aware, which is

20   obviously different from showing that Clear Recon was *actually* aware. *Id.* ("Plaintiffs believed

21   that the May 15th closing had been discussed with Clear Recon by FoA and the Title company";

22

23   the loan application process, gave materially false or inaccurate information or statements to Lender"); if they *were*
       truthful in their application for the reverse mortgage (and therefore were *not* truthful with this Court), Defendants were
24   within their rights to nonjudicially foreclose. *See* LCR 83.3 (governing standards of professional conduct before the
       Court); Washington Rules of Professional Conduct ("RPCs") 3.3(a) and 8.4(c).

1  "Plaintiffs' believed that their housing counselor kept Clear Recon, the trustee, and BANA's

2  lawyers at Aldridge Pite informed about their reverse mortgage loan application."). Thus, the

3  Potters' claim that Clear Recon violated its duty of good faith fails.

4      *Third*, the Potters allege that Clear Recon's sale of their property was untimely. *Id.* at 14

5  (Count III). They argue that the DTA "divests a trustee of authority to conduct a sale more than

6  120 days from the date in the Notice of Sale." *Id.* (citing Wash. Rev. Code § 61.24.040(10)).

7  According to the Potters, "Clear Recon conducted the non-judicial foreclosure sale on plaintiffs'

8  property no less than 350 days since the first trustee sale was scheduled for June 2, 2023," which

9  is "230 days beyond the statutory limit." *Id.* Like the others, this claim also fails. Section

10  61.24.040(10) allows the trustee to postpone a noticed sale, but the total delay cannot be more than

11  120 days from the original sale date listed in the notice of trustee's sale. Wash. Rev. Code

12  § 61.24.040(10). Once that 120-day period has run, the trustee must "reissu[e] the statutory

13  notices" in order to nonjudicially foreclose on the property. *Albice v. Premier Mortg. Servs. of*

14  *Washington, Inc*., 276 P.3d 1277, 1282 (Wash. 2012); *Cedar W. Owners Ass'n v. Nationstar*

15  *Mortg., LLC*, 434 P.3d 554, 562 (Wash. Ct. App. 2019) ("After the 120-day period expires, a new

16  trustee's sale must be scheduled and a new notice of trustee's sale issued and recorded to ensure

17  potential buyers are informed of the new sale date."). The Potters allege that the first notice of

18  trustee sale set the foreclosure sale date for June 2, 2023. Dkt. No. 13 at 6. The sale did not happen

19  at that time because the parties entered into foreclosure mediation, which ended up resolving the

20  Potters' default on one of the two loans. *Id.* The necessary implication of the Potters' claim is that

21  Clear Recon never sent a second notice of trustee's sale, although they do not explicitly allege that

22  in the body of their complaint. However, in support of this claim, the Potters cite (and therefore

23  incorporate) Exhibit D to the declaration of Arthur Ortiz. *Id.* at 14. Exhibit D contains copies of

24  (1) "the Notice of Trustee Sale scheduling foreclosure sale of plaintiffs' property for June 2, 2023"

*and* (2) "the Notice of Trustee Sale scheduling foreclosure sale of plaintiffs' property for May 17, 2024." Dkt. No. 13-1 at 2. The date of the latter Notice (which states that it attaches a Notice of Trustee's Sale) is January 5, 2024. Dkt. No. 13-5 at 8–11.[5] "Nothing in RCW § 61.24.040([10]) or in remainder of the Deed of Trust Act prohibits a trustee from doing what [Clear Recon] did in this case: recording a new notice of trustee's sale announcing a new sale date." *Knecht v. Fid. Nat. Title Ins. Co.*, No. C12-1575RAJ, 2013 WL 7326111, at *5 (W.D. Wash. Mar. 11, 2013).

For all the reasons above, the Potters have not stated a CPA claim against Clear Recon. Counts I, II, III, and V in the first cause of action are dismissed.[6]

### 2. The CPA Claim Against Bank of America Fails

The Potters premise their CPA claim against Bank of America on an alleged violation of Washington's Consumer Loan Act, Wash. Rev. Code 31.04 et seq. (Count IV). Dkt. No. 13 at 15–16. This fares no better than their claim against Clear Recon.

The Potters allege that Bank of America, in its capacity as a mortgage loan servicer, violated the Consumer Loan Act by "ignor[ing] information that confirmed pay off of plaintiffs' loan was imminent" and by "[selling] plaintiffs' property just days prior to plaintiffs' pay-off delivery." Dkt. No. 13 at 15. This fails for two independent reasons. First, for the same reasons as explained above, the amended complaint does not actually allege that Bank of America was aware that the reverse mortgage had closed before the foreclosure sale, or that the funds would be paid out imminently. It also does not plausibly allege that Bank of America "ignored" that information because the amended complaint does not allege that any communication was actually sent to Bank

---

[5] Documents attached to the Lowell declaration—which is also incorporated into the Potters' complaint—also support that a second notice was, in fact, sent. Dkt. No. 14 at 11 (the Potters' representative stating "I know there is a Trustee Date set for May 2024"); Dkt. No. 14-1 at 3 (Listing "2024-05-09 Notice of Trustee's Sale" as a document Mr. Lowell reviewed).

[6] Count V, for an injunction against Clear Recon, is not really a standalone claim. Rather, it seeks a form of relief based on the alleged misconduct alleged in Counts I to III in the first cause of action. Dkt. No. 13 at 17–18.

of America—only that the transaction confirmation "was to be" sent or that the Potters "believed" it had been sent. Dkt. No. 13 at 7.

But even if Bank of America had been aware of (or ignored communications about) the reverse mortgage and proceeded with the foreclosure sale anyway, that would not violate the Consumer Loan Act. The Act prohibits, among other things, directly or indirectly employing a scheme to mislead or defraud any person, engaging in unfair or deceptive practices, or obtaining property by fraud or misrepresentation. Wash. Rev. Code 31.04.027(1)(a)–(c). The Potters argue that Bank of America's actions were "unfair" or "deceptive" in violation of subsection (1)(b). Dkt. No. 13 at 16; *see also* Wash. Rev. Code § 31.04.027(1)(b) (prohibiting unfair and deceptive conduct). The CLA does not define "unfair or deceptive" acts, but Washington's Department of Financial Institutions has enumerated 24 types of behavior that qualify. *See* Wash. Admin. Code 208-620-550. Bank of America's alleged misconduct does not appear to fall into any of these categories, and the Potters do not otherwise cite any authority suggesting that the alleged misconduct falls within the scope of the CLA's prohibition on unfair or deceptive practices. The Potters' attempt to fit Bank of America's behavior into the next category of proscribed conduct— obtaining property by "fraud or misrepresentation," Wash. Rev. Code § 31.04.027(1)(c)—also fails. Beyond failing to allege what "property" Bank of America "obtained," the Potters do not plausibly allege a misrepresentation (let alone fraud). The alleged misrepresentation is Bank of America's purported statement that it and Clear Recon were "never informed . . . about the imminent reverse mortgage pay-off." Dkt. No. 13 at 16. As explained above, there are no non-conclusory allegations showing that the Potters actually did inform Bank of America that their reverse mortgage pay-off was imminent.

For these reasons, the Potters do not plausibly allege that Bank of America violated the Consumer Loan Act or otherwise acted unfairly or deceptively. Count IV of the first cause of action is dismissed.

**E.    The Potters Do Not State a Negligence Claim Against Clear Recon and Bank of America (Third Cause of Action)**

Bank of America next moves to dismiss the Potters' negligence claim for lack of a duty of care. Dkt. No. 27 at 8. Clear Recon joins that argument without elaborating on whether Bank of America's no-duty-of-care argument would apply equally to it as the trustee. Dkt. No. 31 at 1. The Potters respond that they have alleged specific duties that were owed and violated. Dkt. No. 35 at 11–12.

To state a negligence claim, a plaintiff must show: (1) the existence of a duty; (2) a breach of that duty; (3) resulting injury; and (4) causation. *Lowman v. Wilbur*, 309 P.3d 387, 389 (Wash. 2013). The existence of a duty is a question of law, and establishing a duty is the plaintiff's burden. *Ward v. Bank of Am. Nat'l Ass'n*, No. 2:19-CV-00185, 2019 WL 2103124, at *3 (W.D. Wash. May 14, 2019) (*Ward I*).

The claim fails as to both Clear Recon and Bank of America. Starting with Clear Recon, even though the Potters establish that Clear Recon owed them a duty of care under the DTA, Wash. Rev. Code § 61.24.010(4) (duty of good faith), for the reasons stated elsewhere in this order, they fail to plausibly allege that Clear Recon breached this—or any other—duty.

As to Bank of America, it is less clear that it owed a cognizable tort duty to the Potters. Bank of America correctly argues that it did not owe the Potters a fiduciary duty as their loan servicer. Dkt. No. 27 at 8. A loan servicer is generally treated as a lender for duty-of-care purposes, and in Washington, lenders do not generally owe a fiduciary duty to borrowers because the transactions are conducted at arm's length. *Ward I*, 2019 WL 2103124, at *3; *Ward v. Bank of*

1    *Am., N.A.*, No. 22-CV-05252- BHS, 2022 WL 4534430, at *4 (W.D. Wash. Sept. 28, 2022) (*Ward*

2    *II*). The Potters do not allege that Bank of America exceeded the role of a conventional lender

3    here. Based on the allegations, the only other possible source of a duty is the DTA. Unlike the

4    trustee's duty, which is codified in the statute, Wash. Rev. Code § 61.24.010(4), there is no express

5    duty running from the beneficiary (Bank of America) to the borrowers (the Potters) in the statute.

6    Some courts have implied a duty, *see Ward I*, 2019 WL 2103124, at *4; *Ward II*, 2022 WL

7    4534430, at *5, but even if the Court did the same, there are no plausible allegations that Bank of

8    America would have breached it. For these reasons, the negligence claim is dismissed.

9    **F.    The Potters' Slander of Title Claim is Dismissed (Fourth Cause of Action)**

10        A slander of title claim requires: (1) false words that are (2) maliciously published (3) with

11   reference to some pending sale or purchase of property, (4) which go to defeat plaintiff's title, and

12   (5) result in plaintiff's pecuniary loss. *Rorvig v. Douglas*, 873 P.2d 492, 496 (Wash. 1994). The

13   Potters bring this claim against both Clear Recon and Bank of America, but the particularized

14   allegations only pertain to Clear Recon. Dkt. No. 13 at 24–25. Regardless, Bank of America has

15   moved to dismiss this claim for lack of false statement and malice, Dkt. No. 27 at 8–9, and Clear

16   Recon has joined the motion, Dkt. No. 31.

17        The Court agrees that the Potters have not alleged what the "false words" are or established

18   that Clear Recon (or Bank of America) acted with malice. The Potters argue in their response brief

19   that the false words were Clear Recon's claims that the property was not being used for agricultural

20   purposes. Dkt. No. 35 at 12. But this is not expressly alleged in the amended complaint, and the

21   Potters "cannot amend their complaint via a response brief." *Rohani v. Rubio*, No. 2:24-CV-00389-

22   LK, 2025 WL 1503950, at *11 (W.D. Wash. May 27, 2025). That aside, the Court has already

23   concluded that the Potters have not plausibly alleged the property's agricultural purpose, and so a

24   slander of title cause of action based on this necessarily fails.

1       The Potters also fail to sufficiently allege malice. "Malice is not present where the allegedly

2   slanderous statements were made in good faith and were prompted by a reasonable belief in their

3   veracity." *Brown v. Safeway Stores, Inc.*, 617 P.2d 704, 713 (Wash. 1980). At most, the amended

4   complaint suggests that Clear Recon and Bank of America did not investigate whether the property

5   was being used for agricultural purposes before stating that it was not, but that falls far short of

6   showing that they acted maliciously. For these reasons, the slander of title claim is dismissed.

7   **G.    The Potters' Tortious Interference Claim is Dismissed (Fifth Cause of Action)**

8       The Potters' last claim against Bank of America is for tortious interference with a contract

9   or expectancy. Dkt. No. 13 at 25. They allege that Bank of America improperly interfered with

10  their reverse mortgage by expediting the foreclosure sale. *Id.* at 26. Bank of America argues that

11  it did not wrongfully interrupt the Potters' reverse mortgage process because it "exercised its legal

12  rights in pursuing a lawful foreclosure on a long-standing default," and that to state a claim for

13  tortious interference, the Potters must allege "an improper objective or the use of wrongful

14  means[.]" Dkt. No. 27 at 9. The Potters respond that "[s]elling the property out from under a closed

15  reverse mortgage deal in violation of RCW 61.24.030(2) by selling agriculturally purposed

16  property in non-judicial foreclosure is not exercising in good faith one's legal interests." Dkt. No.

17  35 at 13 (citation modified).[7] They argue that they sufficiently alleged bad faith. *Id.*

18      A claim for tortious interference with a contractual relationship or business expectancy

19  requires: (1) the existence of a valid contractual relationship or business expectancy; (2) that

20  defendants had knowledge of that relationship; (3) an intentional interference inducing or causing

21  a breach or termination of the relationship or expectancy; (4) that defendants interfered for an

22

23  _____

[7] This argument illustrates the Court's concern with the Potters' conflicting representations regarding the principal use of the property: again, if the Potters were *not* truthful about the property not being principally agricultural in their application for the reverse mortgage, it appears that they would not have had the funds from that mortgage, Dkt. No. 14-4 at 9, and if they *were* truthful in their application for the reverse mortgage, Defendants were within their rights to nonjudicially foreclose.

24

improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). "Exercising in good faith one's legal interests is not improper interference." *Id.*

The Court agrees with Bank of America that the Potters have not stated a claim for tortious interference. Starting with the third element, the amended complaint's allegations do not establish that Bank of America was operating with an improper purpose. First, the Potters do not plausibly allege that Bank of America was even aware that the reverse mortgage had closed or that the funds would be disbursed imminently. Second, it did not—as the Potters suggest—change the date to ensure the sale occurred before the reverse mortgage could pay out. Dkt. No. 13 at 26. This is entirely unsupported by the particularized factual allegations. Third, there is no dispute that the Potters were in default on the loan and that Bank of America had a contractual right to foreclose on the home. It is not improper for a lender to enforce a contractual right even though doing so might have second order impacts on the borrower's financing arrangements with third parties. *See Travelers Cas. & Sur. Co. of Am. v. Decker*, No. 2:24-CV-00253-TL, 2024 WL 4593024, at *6 (W.D. Wash. Oct. 28, 2024) ("Where the contract between a lender and borrower permits the lender to take action that might, as a practical matter, put the borrower in trouble because it has lost its financing, such action is not inherently unreasonable." (citation modified)), *reconsideration denied in relevant part*, 2025 WL 71880 (W.D. Wash. Jan. 10, 2025).

Even assuming an improper purpose or improper means, the claim still fails because it does not allege *intentional* interference with the reverse mortgage. The amended complaint alleges—at most—incidental interference, which is not sufficient to sustain the claim. *See Hairston v. Pac.-10 Conf.*, 893 F. Supp. 1485, 1494 (W.D. Wash. 1994) (citing cases), *aff'd*, 101 F.3d 1315 (9th Cir. 1996). In other words, if a party had "no desire to effectuate the interference by [its] action but knew that it would be a mere incidental result of conduct [it] was engaging in for another

purpose, the interference may be found to be not improper." Restatement (Second) of Torts § 766B, cmt d; *see also Pleas v. City of Seattle*, 774 P.2d 1158, 1162 (Wash. 1989) (agreeing "with the general thrust of § 766B"). Here, it is simply not plausible from the amended complaint's allegations that Bank of America proceeded with the foreclosure sale for the purpose of interfering with the reverse mortgage. Instead, the allegations suggest that Bank of America, after a two-year process of attempting to foreclose on the defaulted loan, Dkt. No. 14-6 at 2–3, decided to proceed with the pre-planned foreclosure sale, and that the reverse mortgage falling through was collateral damage. For these reasons, the tortious interference claim is dismissed.

## H.    The Claim for Declaratory Relief Against Bykhnyuk is Dismissed (Sixth Cause of Action)

Finally, no party has moved to dismiss the Potters' sixth cause of action, for declaratory relief against Bykhnyuk. Although Bykhnyuk joins Bank of America's motion to dismiss and advances some of his own argument in his notice of joinder, he has not filed a motion seeking relief that is different from, or in addition to, the relief sought by Bank of America's motion. Dkt. No. 33 at 1–2.

However, the Court must still dismiss the claim because it is based on the same "flaws in the foreclosure proceedings" that the Court has rejected elsewhere in the amended complaint. Dkt. No. 13 at 27–28. That is, the Court has already found that the amended complaint does not plausibly allege that the Potters' property was sold via "unfair and irregular procedures"—*i.e.*, "selling plaintiffs' agricultural property in a non-judicial foreclosure sale in violation of RCW 61.24.030(2), selling plaintiffs' property nonjudicially beyond the statutorily mandated 120-day limit in violation of RCW 61.24.040(10), as well as the trustee's breach of its duty of good faith to the borrower under RCW 61.24.010(4)." *Id.* at 27. The declaratory judgment claim is thus dismissed.

1    **I.    Leave to Amend**

2        Rule 15(a)(2) directs district courts to "freely give leave when justice so requires." As the

3    language of the rule suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen*

4    *Corp. v. Dialysist W., Inc*., 465 F.3d 946, 951 (9th Cir. 2006). This is because "the underlying

5    purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or

6    technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation

7    modified).

8        A district court should deny leave to amend "only if there is strong evidence of undue

9    delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

10   by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

11   of the amendment, or futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma*

12   *Cnty*., 708 F.3d 1109, 1117 (9th Cir. 2013) (quotation modified). Evaluation of these factors

13   "should be performed with all inferences in favor of granting the motion [to amend]." *Griggs v.*

14   *Pace Am. Grp., Inc*., 170 F.3d 877, 880 (9th Cir. 1999). However, the amendment factors are not

15   entitled to equal weight. *Eminence Cap., LLC v. Aspeon, In*c., 316 F.3d 1048, 1052 (9th Cir. 2003)

16   (per curiam). The Ninth Circuit has repeatedly emphasized that prejudice "carries the greatest

17   weight" and is "the touchstone of the inquiry under [R]ule 15(a)." *Id.* (internal quotation marks

18   omitted); *see also, e.g.*, *Brown v. Stored Value Cards, Inc*., 953 F.3d 567, 574 (9th Cir. 2020).

19   Indeed, there is a presumption in favor of amendment absent prejudice or a "strong showing" under

20   the remaining four factors. *Eminence Cap*., 316 F.3d at 1052. The party opposing amendment

21   bears the burden of showing that amendment is not warranted. *Hedglin v. Swift Transp. Co. of*

22   *Ariz*., No. C16-5127-BHS, 2016 WL 8738685, at *1 (W.D. Wash. Nov. 15, 2016).

23       Based on the analysis elsewhere in this order, the Court finds that the "bad faith" factor is

24   a close call. The Potters have advanced claims that are flatly contradicted by the evidence they

incorporate by reference into their complaint, they sought to benefit from misrepresentations they made either to the Court or to their reverse mortgage lender, and they opposed requests for judicial notice of documents they had already introduced into the record as part of their complaint, *compare, e.g.*, Dkt. Nos. 14-8, 13-5 at 10–11 *with* Dkt. No. 28 at 25–42, 20–21; *see* Dkt. No. 36.[8] The Court cautions the Potters and their counsel that in amending their complaint (and in all further proceedings before this Court), they must abide by all applicable rules, including but not limited to Federal Rule of Civil Procedure 11, Local Civil Rule 11, and—with respect to the Potters' counsel—the Rules of Professional Conduct. The Court may impose sanctions and/or discipline for violations of applicable rules. *See* LCRs 11(c), 83.3(c); RPCs 1.1 cmt. 5, 3.1, 3.3(a), 8.4(c). Despite the Court's misgivings, however, it will defer to the liberal standards under Rule 15 and grant leave to amend certain claims. Specifically, the Court will grant the Potters leave to amend the following claims:

- The RESPA claim against Bank of America based on Section 2605(k);

- The CPA claim against Clear Recon, only as to Count II;

- The CPA claim against Bank of America (Count IV);

- The negligence claim against both Clear Recon and Bank of America; and

- The declaratory judgment claim against Bykhnyuk.

In light of the Potters' representation in their reverse mortgage application that their property was not principally used for agriculture, the Court will not permit them to amend their complaint to allege otherwise. The Court further concludes that no amendment could save the remaining claims; those claims are dismissed with prejudice.

---

[8] The Court also notes that the declarations at docket entries 35-1 and 36-1 are inappropriate in a number of respects. *See, e.g.*, RPC 3.7 cmts. 1, 3.

### III.  CONCLUSION

For the reasons explained above, the Court GRANTS Bank of America's Motion to Dismiss. Dkt. No. 27. Other than the claims for which the Court has granted leave to amend, all other claims are dismissed with prejudice. The Potters must file their amended complaint within 21 days of this Order, and it must comply with Local Civil Rule 15(a) by attaching a redlined version. If the Potters do not file a timely amended complaint, the Court will close this case.

Dated this 5th day of August, 2025.

Lauren King
United States District Judge

ORDER GRANTING BANK OF AMERICA'S MOTION TO DISMISS - 22